Good morning. May it please the Court. Michael Tanaka, Deputy Federal Public Defender, appearing on behalf of Appellant Perez. I'm going to devote the bulk of my argument to the jury misconduct issue, if time permits, or if the Court has questions, I'll address the prosecutorial misconduct issue. Excuse me. With respect to jury misconduct, there are three facts that are undisputed here. One, that at least through part of the trial, there was a biased juror, juror Mendocino, who was sitting on the trial. Two, that juror... Just on that point, how long had the jury been together and how much of the trial had elapsed before this incident occurred? The hearing occurred after two full days of testimony. This was on the morning of the third day of trial. We also know that this juror had communicated her belief in the defendant's guilt to at least two other jurors prior to the finish of the trial. And the third thing we know is that defense counsel had observed this juror, Mendocino, talking to a third juror during the trial and writing something, or the third juror had written something on a notepad and shown it to Juror Mendocino. So that brings us to the issue. The issue is whether the district court erred in failing to conduct an individualized hearing with respect to that third juror. And... What's the standard of review, counsel, on this matter? It's an abuse of discretion, Your Honor. And if so, whether there was a consequent error in denying the motion for mistrial. We submit that the answer to that is yes. It's a fundamental tenet in our criminal justice system that everyone on trial is entitled to a fair jury, and a jury that doesn't decide the case until all the evidence is in, the arguments of counsel and instruction of the court, is certainly not permissible to decide a case after the first day of testimony, after the first break. Well, I don't think Judge Matz didn't disagree with that. We're really talking about the process that he implemented, aren't we, as to ferret out whether or not this one juror, Mendocino, had tainted anybody else. That's correct, Your Honor. So what is it about the process that was defective such that we can say that Judge Matz abused his discretion? He abused his discretion because, based on the facts of this case, it was very clear that he had an obligation to conduct an individualized inquiry with respect to that third juror, the one that had been seen speaking to Juror Mendocino during trial and writing something on a notepad, which raised a fair inference that that communication may have been in the nature of the communication that had been revealed in the other two. Now, the issue is, did his generalized question of the panel suffice in this case? We submitted not, and that's clear from the record. The reason is, in terms of bias, no one's going to want to admit in front of the entire jury panel in open court that, yeah, I did something improper. And Judge Matz realized that. That's why his initial inquiry, he was very clear to state he was going to do this in chambers, in private, and direct it to the single person. He said, if she's not doing it in open court and with some judge looking down on her and inherently judging her with a bunch of lawyers and strangers present, then he'll more likely get a candid answer. But let me be sure I understand the process. I thought that Judge Matz, first of all, did he not talk to Mendocino, the one juror that had been identified, and talk to her separately? That's correct. Okay, and then the alternate juror who had tipped everybody off to this event, he had talked to her separately, correct? That's correct. Actually, he talked to her first. But he talked to both of them separately. Both of those. And then he adopted the process where he admonished and then asked the impaneled jurors and alternates whether any of them had any improper contact. And it's that point that the, was it juror number nine? One of the jurors then surfaced and said, yes, I too. And the, but they were able to do that from the jury room. They didn't do that sitting out in the jury box, did they? That is, were they required in this process to raise their hand in front of everybody? Wasn't, how is it that the jury number nine? My understanding is that they were able to communicate any information they might have to the clerk who relayed it to the court. But from the jury room, not in the jury box. That's correct. Okay. And do we know how they did that? Did they pass a note? Did they, in other words, I hear what you're saying about, and what Judge Matt said about not putting a juror in the spotlight. But I thought the process involved a way for them to do it more or less anonymously. Am I mistaken in that? No. That's correct. I don't believe that he was going to make them stand in open court and confess, basically, to doing something improper. On the other hand, he did not wait to question Juror Mendocino. You know, he didn't go to them and say, let's see if anyone volunteers, that they did anything improper. He singled her out to bring her into the jury room. But I think it must be possible. Go ahead. He had a specific suggestion given to him that Juror Mendocino had said something improper. All he had for Juror No. 3 was the observation by defense counsel that Juror No. 3 had been seen speaking to Mendocino and holding a pad up with no suggestion at all that the subject matter was improper. Is that correct? That's correct. But the suggestion or inference that it was improper relates from the information the judge already knew about Juror Mendocino. That is that that's an inference that depends on an assumption. That is that Mendocino only talked about improper things and wasn't talking about how funny the attorney's tie was or what the weather's like or all the kind of backroom chatter that goes on amongst jurors when they're together for hour after hour. That's a tough inference to make, isn't it? That it has to be improper? The inference that it definitely has to be improper, I agree, is a tough inference. But the inference that it, while it could have been improper, I think that's a much easier inference given her history. She talked to two other jurors improperly. We know that she was talking to this third person. It may have been improper. It may not have been. But it certainly was incumbent on the judge to find out. And the way to find that out was to talk to this juror individually, not necessarily rely on someone volunteering that they had engaged in some improper discussion. That's the only point here. It would have been a very easy thing to do. It's something that he did with two other jurors, and it was something incumbent on him to protect Mr. Perez's right to a fair and impartial jury in this case. Right. Counsel, in this instance, though, as has been relayed by my colleagues, the judge did exactly what I think you would have liked to have done with respect to the two jurors. Then, without any further indication, as far as any third-party tip-offs, that there was anything wrong, he made this inquiry of the panel in total, apparently done in the jury room, apparently done somewhat discreetly. Do you have any case law or any authority that suggests that to do what the judge did in this case is, in fact, an abuse of discretion? No. There's certainly nothing on point. There's general language in cases saying that the judge has to conduct whatever inquiry is necessary to preserve the defendant's right to a fair trial. I believe that's cited in the brief. Right. But there's nothing too specific. And in this case, I mean, district judges have a difficult role. They have to decide right now. There's a lot of pressure and time. Everybody's entitled to a fair trial. But what you're asking us to do is to indicate that what this judge did, clearly in an attempt to find out if there were any other jurors that had been tainted, he made a reasonable inquiry discreetly. One juror responded to that inquiry. So there's evidence that people were listening to what he was saying, were responding in some way, and he concluded, based upon the responses, that there were no further tainted jurors. As was indicated by Judge Clifton, jurors talk about lots of things, not necessarily things that are incorrect. So I think you're going to have to show us something more than what we have seen, in effect, an inference on an inference to show that the judge abused his discretion here. Well, respectfully, Your Honor, I believe that one juror was willing to volunteer about an improper communication after such an inquiry by the court is remarkable in itself. And so your point is that, in this case, this juror stood out from among all the others because of the note passing. That's right. Okay. I think we have that. Why don't you save your remaining time for any rebuttal, because we may have questions of the prosecution. Thank you, Your Honor. Good morning. I'm Robert McGann. I'm an assistant United States attorney. I represent the United States in this matter. I had intended to devote the majority of my time, if not all of my time, to the claims of improper commentary during the closing argument and rebuttal. We'll help you with that. And I intend to do that unless the court invites an argument or has questions regarding the juror's comment. I would like to just follow up on counsel's point, which I think is the one aspect of the process that is, at least for me, a bit troublesome, because it is true that jurors talk about a lot of things, and it is true that, you know, whatever went on between juror number three and Mendocino, but the passing of a note, given the fact that she had, indeed, made, and the judge knew that Mendocino was given to making improper statements, why is it not appropriate to at least remove any element of doubt with the one person who had been identified as having had a communication with Your Honor, it may very well have been appropriate to single out juror number three and call them out of the jury and bring them in for an in-chambers conference. But I think the real question for the Court is, was it an abuse of discretion not to do that? And what Judge Matz did in this case was to make a choice, and that choice was, does he single out one juror based upon a comment by defense counsel that he had observed a note passing, or make a generalized inquiry to the entire panel and trust that the jury panel will follow the instructions that the district court gave, and I think the record in this case bears out that they did. Just so the record is clear, the jury was sitting in the jury box when Judge Matz gave what I thought were very sensitive and very well thought through instructions to the jury about not forming a conclusion about the evidence until all the evidence had come in, and not to discuss the case with anybody else. He gave a generalized inquiry. He held a hearing as contemplated by this Court's decision in United States v. Angiulo. And after that, the instruction to the jurors was, if there is anything you wanted to discuss with the Court, simply inform the clerk. The jurors were then allowed to go back into the jury box. I understand the process, but the problem still is that with all of those admonitions that were given at the outset of the trial, one of the jurors at least had an improper contact with two other jurors. So now that moves it beyond the realm of just, you know, there's some suspicion. There's actual indication that this juror may have had improper communications with others. And the alternate was troubled. She came forward. The other juror did not come forward until Judge Matz made the statement. So that means one juror was very sensitive. Another juror was willing to individually respond. And juror number three may have been sort of a step down from that. So it's not clear to me why it's not an abuse of discretion not to zero in on the one where there is what we might call probable cause. Now, I understand signaling out a juror has some collateral consequences, and there may well have been other ways to accomplish it by calling them all in and going through a perfunctory individualized review in order to not focus on one juror, but I don't know. And I think, Your Honor, that's exactly what Judge Matz was trying to avoid, which was to draw more attention to the problem, to call in every single juror and have an inquiry of every other juror, because from the juror's perspective, from their point of view, that's not really being singled out. That's right. Call them all in. Call each of them in individually. Your Honor, that, leaving aside the fact that that's a time-consuming process. Now, wait a minute. You have a case where this is a situation where the juror has expressed to two jurors predisposition and bias against the defendant. That's correct, Your Honor. And again, we come back, I believe, to your original questions, that what this is all about is a process to identify whether or not the jury panel as a whole has been infected with possible bias. And I think, to follow up on Judge Smith's point, I don't think that one could reasonably say this was an abuse of discretion. He had a choice to make. No one disputed that there had to be an inquiry put to the jury panel based upon alternate number two's allegations and juror number four, Juremendecino's, confirmation that the allegations were true. No one disputed that there had to be some sort of hearing and some sort of inquiry. The question is, was that an abuse of discretion? The district judge had to make a choice. I think the choice that he made was a reasoned choice, and I think that the instructions that he gave to the jury would have cured any possibility that there was bias. One final thought. If the Court is troubled, the remedy is certainly not a mistrial. The remedy is further hearing. That's exactly what happened in United States v. Angiulo, where the district court literally did nothing when informed by a jury, a juror, that she had received a threat. She communicated the threat to other jurors, and yet the district court did nothing to follow up on whether or not the rest of the panel had been infected by that misconduct. I have approximately four minutes. Actually, go ahead. Could you address, at least my concern is, there does seem to have been some vouching here, the implication that the inspector's statements had been essentially vetted by the prosecution office, and that sort of troubles me. Why doesn't that constitute prejudicial vouching? Your Honor, let me first explain the context. I know it has to be plain error, so. Correct. But let me explain the context. Throughout the defense closing argument, there was an inordinate amount of attention placed on the manner in which Inspector Cummings conducted the investigation and the conclusions that she reached. What was never in dispute and what was conceded from the defendant's opening statement is that the defendant had misrecorded transactions while she was under surveillance, and it was undisputed that the defendant had misrecorded transactions during the time period that was subjected to forensic analysis. When I made that comment that our office reviewed the evidence, I was trying to correct what I believed was a misimpression created by the defense that Inspector Cummings reached a conclusion, and then the next thing you know, we're impaneling a jury. I believe that all I was doing was simply describing a process and was simply describing something that the district judge had told them during jury selection and what the district judge stated, excuse me, Your Honor, was the following. The fact that the defendant has been charged with a crime simply establishes that a group of people concluded, okay, that the government concluded that there was enough evidence to make it more probable than not that she had committed the crime. In making the statement that I did, I did not – I do not believe and did not believe then that I was going any further than what the district judge had already told them. Inspector Cummings' credibility as to the objective facts was never in doubt. What the defendant did objectively in terms of misrecording the transactions or failing to record transactions and the manner in which the paper records were to be interpreted, that was all undisputed. What they tried – what the defense tried to do was focus the jury's attention on what Inspector Cummings believed and when she believed it. All of those facts were irrelevant. None of those facts had any relevance to the eventual outcome of the case, which is what did the defendant do? Did that demonstrate – was that evidence of deliberate misconduct? And if you conclude that it was, what's the only reasonable interpretation? The vice and danger of vouching is that the prosecutor is asking the jurors to substitute their own independent judgment, to abnegate their responsibility to not review the evidence and trust the prosecutor. And I think when you look at the record as a whole, 27 pages combined of my closing argument and my rebuttal, I don't think it can be fairly said that I was asking the jurors to substitute their judgment for mine. As I said, and I think this is at Government's Exeret of Record 390, there's the two things – You think you meant to say you didn't want the jury to substitute your judgment for theirs? If I misspoke, that's correct, Judge Fischer. I apologize. But as I explained to the jurors, what they had to trust were their own two eyes. Seeing is – I understand that. I'm just – I appreciate when we look at a cold record, we're trying to get context and in the sequencing of the phrasing does lend itself to the construction that the – that you were putting your office behind the credibility of the inspector. But I hear your argument about the context. Your Honor, I would not – and let me just say, Your Honor, I would not – And I know you know that that's not something that should be done. It should not be done. And in retrospect, looking at that passage, that is not one that I would repeat. I would agree that that is a possible interpretation, but I don't think that's the only interpretation. And I think that the jurors would know that I was not asking them to substitute their judgment. I have approximately 10 seconds left. No, actually, you're 10 seconds over. Oh, I apologize. It's getting bigger. If you have any questions regarding the claim of Griffin error or Jermis conduct, I'd be happy to answer them. I think we have briefs, and most of my colleagues have. Thank you very much. Mr. Clifton, you're okay? All right. Thank you. I don't have much more to add. I'd just like to leave the Court with a statement. Mr. Tanaka, before you do that, can I ask a quick question? What evidence can you point to to support the defendant's defense theories? We heard in the issue of vouching, for example, this is plain error. We have to evaluate, based upon the record, what prejudice there was. Seemed like it was an overwhelming amount of evidence that the prosecution put on, you know, hours of videotapes, I think 170 instances involved here. What evidence did your client put on that substantiated, or that any other party substantiated her theories of why these things happened and why they were innocent? I submit, Your Honor, that the evidence is not so much the evidence that was put on, but the evidence that wasn't put on. That is, you're right, there was a large amount of circumstantial evidence. And one cannot deny that circumstantial evidence can oftentimes be sufficient and powerful. The problem in this case, though, is that there wasn't. There was a total lack of direct evidence. Now, in many cases, you would expect that. There would not be any direct evidence. Here, though, the inspector put up three video cameras over a period of 30 days or some long number of days, and not once in all those transactions, three video cameras, did she have any evidence or the government present any evidence that Ms. Perez was taking money. Obviously, if she's doing what she was convicted and charged with, she was somehow getting the money from the cash box into her pocket, and we have no evidence of that. I submit that's powerful in and of itself and enough to give the jury some amount of doubt about this case. Like I pointed out in the brief, it's not like they went back in the jury room and asked for an hour or two and said, guilty. They took a whole day of deliberations, whereas if the evidence was really that overwhelming, one would suspect that this would have been a very quick verdict. Other than that, I'd like to reference respect to Angulo and a quote, I think, that sums up this case, and that's what this Court said, was, because even a single partial juror violates a defendant's constitutional right to a fair trial, the judge must always act diligently to preserve that right. We submit that Judge Mats here failed that duty by not questioning the other juror that he had caused to believe might have been tainted. Thank you. All right, counsel, we appreciate the argument. Thank you. The case argued is submitted. And the next case on calendar is United States v. Gardner.
judges: Fisher, Clifton, Smith